IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MARY HELEN GAUTREAUX,**

      **Plaintiff,**

  vs.                                    Case No. 03-2298-GTV

**MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,**

      **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Mary Helen Gautreaux brings this action against Defendant Massachusetts Mutual Life Insurance Company, alleging that Defendant improperly denied her claim for long-term disability benefits. Defendant moved for summary judgment (Doc. 29), claiming that because Plaintiff's alleged disability is "contributed to" by a psychological or emotional disease/disorder or caused by a spinal disorder, both of which are specifically excepted by a rider to the policy, no benefits are due. Plaintiff responds that (1) she is not claiming disability as a result of a psychological disorder, and (2) a letter purportedly clarifying the portion of the rider concerning spinal disorders modified the policy's terms, making her eligible for benefits. For the following reasons, the court denies Defendant's motion (Doc. 29).

1

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are uncontroverted. Plaintiff failed to properly respond to Defendant's list of uncontroverted facts, so all of the following facts are taken from Defendant's brief and the evidence supporting it. Immaterial facts and facts not properly supported by the record are omitted. References to testimony are from depositions, unless otherwise noted.

### A. Long-Term Disability Policy Language

Plaintiff applied to Defendant for a long-term disability policy on December 1, 1998. Defendant issued a policy to Plaintiff on April 14, 1999, and Plaintiff accepted the policy on April 22, 1999 by signing a Modification of Coverage rider. Plaintiff kept the policy in force until December 14, 2000, when Defendant cancelled it at Plaintiff's request.

Under the policy, Defendant committed to "pay the Total Disability Monthly Benefit shown in the Policy Specifications [($2,000)] if the Insured is Totally Disabled." The policy defined "Total Disability" as:

> The occurrence while this Policy is In Force of a condition caused by a Sickness or Injury, in which the Insured cannot perform the main duties of his/her Occupation and is not working at any other occupation for which he/she is reasonably suited by education, training, or experience. The Insured must be under a Doctor's Care.

The policy contained a provision specifying that:

> An authorized officer of Our company must approve any change to the provisions of this Policy. Our agents are not authorized to make changes or waive any provisions of this Policy. If the change restricts any coverage, the change request must be signed by You. All changes must be attached to the Policy.

The policy was also subject to a Modification of Coverage rider, which provided:

> The insurance will not cover any disability contributed to or caused by any psychological or emotional disease or disorder including treatment, surgery and complications thereof.
>
> The insurance will not cover any disability contributed to or caused by any injury to or disorder of the spine including its muscles, ligaments, discs or nerve roots including treatment, surgery and complications thereof.

Before accepting the policy, Plaintiff sought clarification from Defendant of the language in the rider regarding the policy's noncoverage of disabilities contributed to or caused by a spinal injury or disorder. Plaintiff testified at deposition that she objected to the rider because it "cover[ed] virtually nothing that I [had] a problem with and any future event that I would have a problem with." Roberta M. Bitzer, Director of Disability Income Claims for Defendant, responded to Plaintiff's request for clarification with a letter dated April 14, 1999, which stated:

> If you were to suffer any disability contributed to or caused by any injury to or disorder of the spine, including its muscles, ligaments, discs, or nerve roots including treatment, surgery and complications thereof, for example, so severe that it resulted in a disability and, in all likelihood, would have done so even in the case of a person whose spine was completely normal, the exclusion would not apply, and the disability would be covered.
>
> On the other hand, if you were to suffer a relatively slight injury or sustain a disorder which would have resulted in a disability because of the existing condition of the spine, but which would not have had the same result in the case of a person whose spine was completely normal, the exclusion would apply and the disability would not be covered.
>
> While legally I cannot incorporate my letter of interpretation into your Modification of Coverage Rider or exclusion rider, this is an attempt to explain how policies issued with a Modification of Coverage Rider or exclusion rider may affect your eligibility for benefits should you become disabled in the future.

### B. Plaintiff's Medical History

Between 1971 and 1979, Plaintiff underwent surgeries for discectomy at C5-6, L5-S1, and

3

L4-5.  She also had cervical fusion at C5-6 and a laminectomy at L5-S1.  Between 1980 and 1988, Plaintiff "used chiropractic manipulation and physical therapy for pain relief."  In January 1988, she complained of "severe right lower back discomfort with radiation of pain along the anterior right thigh to the knee," and was admitted to St. Joseph's Health Center.  Plaintiff's treating physician during her hospitalization noted:

> The patient has a long past history of back problems and has had at least 3 previous back surgeries including 2 lumbar discectomies and laminectomies – L5,S1 and L4,L5 as well as C5,C6 discectomy and fusion.  Apparently no injury precipitated any of these problems and she knew of no injury precipitating the current episode.

In approximately 1996, Plaintiff was diagnosed with major depression.  She has taken Prozac for her depression since 1996.

Also in 1996, Plaintiff was seen by Ann K. Smith, M.D., for back pain that occurred after she mowed her lawn.  Dr. Smith noted that Plaintiff had a "chronic history of back problems [and] after her 3rd back surgery spent a couple of years being 'a chronic back pain patient,'" and that "about every 6 to 9 months [Plaintiff] suffers an extreme episode of back pain with severe back spasm."  Between September 1996 and August 1998, Plaintiff visited several doctors, took medication, and underwent physical therapy for her back on an intermittent basis.

On August 4, 1999, Plaintiff saw Dr. Stanley Sharp for complaints of "severe back pain."  Dr. Sharp noted that Plaintiff could not "walk or lie down without pain" and that Plaintiff had "multiple similar episodes in [the] past of acute back pain managed as in the plan below."  On August 12, 1999, Plaintiff reported to Dr. Thomas Joseph that she had fallen, injuring her ankle, knee, and arm.  Plaintiff reported to Dr. Sharp's office that, on or about August 17, 1999, she fell,

hurting her ankle and back.  On August 20, 1999, Plaintiff reported to Dr. Joseph that she had fallen again, and that she had also run her car into a curb.

### C.  August 31, 1999 Accident and Treatment Following

On or about August 31, 1999, Plaintiff fell down between three and five stairs in her home. Plaintiff applied ice to her ankle as a result of the fall, although she later stated that she had injured both her left ankle and her lower back.  Plaintiff later reported that she experienced moderate ankle swelling and a stiff neck the day after the fall, and that her ankle was swollen and sore during the next week.

On September 8, 1999, Plaintiff contacted Dr. Sharp's office to request refills of her back medication.  She stated that she had been in a car accident, but did not mention the August 31 fall. She saw Dr. Sharp on September 14, 1999, and his notes from the visit state that Plaintiff had been in a motor vehicle accident, but do not mention the August 31 fall.

Plaintiff did not receive medical treatment for injuries that allegedly resulted from the August 31 accident until September 20, 1999, when Dr. Brian Healy examined her.  He noted that Plaintiff "apparently fell about 3 steps landing on the ankle. . . .  She says that the pain is more or less around the ankle, both medially and laterally.  She has undergone 3 back surgeries in the past and this has also tended to stir up the back pain which she feels is a normal consequence of these problems."  Dr. Healy had Plaintiff wear a "Cam walker," which was painful to Plaintiff and was later replaced by a short leg cast on the ankle.  Plaintiff's last day of work was October 15, 1999.

Over the following seven months, Plaintiff saw numerous doctors for back pain, and was hospitalized for "uncontrollable low back pain" in February 2000.  On May 24, 2000, Plaintiff

underwent spinal-fusion surgery and pedicle-screw fixation of the L4-5 and L5-S1, with anterior cage array variety at L4-5.

In a letter dated December 26, 2000, Dr. Daniel Downs stated that Plaintiff's May spinal fusion was successful, but that Plaintiff was "not going to be employable because of her chronic pain syndrome and mechanical back instability." Dr. Downs diagnosed Plaintiff with "chronic pain syndrome status post lumbar fusion status post cardiac risks post pulmonary embolus." He stated:

> [Plaintiff's] continued physical and mental limitations are based on back pain, radicular leg pain, and chronic pain syndrome that has developed with increasing severity over the last several months.
> . . . .
> [Plaintiff] cannot sit for a long period of time because of her mechanical back and neurogenic leg pain exacerbated by her severe chronic pain symptoms.

In a "Physician's Residual Functional Capacity" form Dr. Downs also completed in December 2000, Dr. Downs indicated that Plaintiff had chronic pain syndrome and depression.

Dr. Downs stated in a letter dated March 3, 2003:

> It is also my opinion, with a reasonable degree of medical certainty, that the severity of the injury sustained as a result of [the] August of 1999 injury would have been disabling regardless of her earlier health problems. My opinion, furthermore, is that anyone with or without prior back history could have been disabled by this injury.

Dr. Edward Prostic subsequently reviewed Plaintiff's medical records on behalf of Defendant. He stated in a letter to one of Defendant's attorneys that:

> [T]his is a patient with chronic low back pain and sciatica with frequent periods of disability and [a] history of extensive previous treatment. Patients with this history often have psychological factors contributing to their feeling of disability. There is no objective sign of worsening of her condition from the [August] 1999 accident.
>   If [Plaintiff] is totally disabled, this would likely be more from psychiatric factors than from purely orthopedically [sic] ones as patients with history of two-

6

> level discectomy and episodic sciatica can usually return to medium-level employment. Her current disability is certainly contributed to by pre-existing disease in her low back. But for the history of pre-existing disease, the [August] 1999 accident more probably than not would have caused only sprain and strain with resolution in 3-6 weeks.

Dr. Prostic later supplemented the letter with the following statements:

> Pain diagrams dated February 5, 2003 and February 6, 2003 are markedly abnormal and highly suggestive of abnormalities that would be confirmed by an MMPI [Minnesota Multiphasic Personality Inventory], should one be performed at that time. An MMPI would likely confirm my opinion that the patient has a psychological problem that overwhelms her physical condition.
> It is widely recognized that repetitious injuries and chronic back pain lead to psychological disorders with depression, hypochondriasis, and hysteria. Once patients have sufficient abnormalities of these tendencies, additional orthopedic treatment is unlikely to be beneficial. This is particularly true of people who have had low back surgery. This patient's clinical presentation is classical for just such a problem with her previous surgery, extended periods of difficulty following low back injuries, new injury with minimal objective findings, and major complaints that lead a surgeon to operate in hopes of improving her but without significant benefit being obtained.

### D. Plaintiff's Claim Under the Policy

On February 3, 2000, Plaintiff notified Defendant that she had a claim for disability benefits. Plaintiff told a claims examiner on February 15, 2000 that she had fallen down three or four steps on August 31, 1999. Plaintiff stated on her "Disability Income Claimant's Statement" that she became disabled on September 10, 1999. She stated that she had never had a similar injury. She later told a claims interviewer that she did not experience significant back pain after the August 1999 accident until a month after her doctors placed her left ankle in a cast.

In May 2000, Don Hacker, D.C., reviewed Plaintiff's medical records dating back to August 8, 1996 at Defendant's request. Based on this review, Dr. Hacker concluded:

> As X-rays of the lumbar spine were not initially taken at the time of the fall and low back complaints do not seem to be outstanding until [Plaintiff's] ankle [was] casted, it is questionable if her low back was affected in the fall.  In either event, a normal lumbar spine of a female 50 years of age would not have incurred the impairment [Plaintiff] has suffered.

Relying on Plaintiff's medical records and Dr. Hacker's opinion, Defendant denied Plaintiff's claim in a letter dated May 24, 2000.  Defendant explained to Plaintiff that it denied her claim because a typical 50-year-old female with a "normal lumbar spine . . . would not have incurred the impairment that you have presented as disabling."

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.  Anderson, 477 U.S. at

256. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider the record in the light most favorable to the nonmoving party. Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984).

### III. DISCUSSION

#### A. Exclusion for Disability "Contributed to" by a Psychological Disorder

Plaintiff's sole argument against considering the evidence of her psychological disorder is that she "would not have been otherwise disabled and never contended her symptom of depression was disabling." But the policy does not provide that she would have to be otherwise disabled by her psychological disorder. The psychological disorder only must "contribute to" her disability.

The evidence before the court, however, is insufficient for the court to conclude as a matter of law that any psychological disorder contributed to Plaintiff's disability. Dr. Downs stated that Plaintiff was "not going to be employable because of her chronic pain syndrome and mechanical back instability." Dr. Prostic stated that "[i]f [Plaintiff] is totally disabled, this would likely be more from psychiatric factors than from purely orthopedically [sic] ones as patients with history of two-level discectomy and episodic sciatica can usually return to medium-level employment." He also opined that "an MMPI would likely confirm my opinion that the patient has a psychological problem that overwhelms her physical condition." While these statements suggest

that Plaintiff suffers from chronic pain syndrome, they are not sufficient to conclusively show the causation necessary to bring Plaintiff's condition under the psychological disorder rider. The court also notes that while Dr. Prostic alluded that chronic pain syndrome is a psychological disorder, Defendant has not presented evidence such that the court can conclude that it is a psychological disorder, bringing it under the rider.

For these reasons, the court denies Defendant's motion based on the psychological disorder rider at this time. If evidence is presented at trial, however, that better establishes a connection between Plaintiff's psychological condition and her alleged disability, it is likely that the psychological disorder rider will bar Plaintiff's claim for disability benefits.

### B.  Exclusion for Disability Caused by a Spinal Disorder

Plaintiff argues that her claim is not precluded by the spinal disorder exclusion because the August 14, 1999 letter amended the insurance policy, and a factual issue remains as to whether her injury would have been disabling regardless of her prior medical history. Plaintiff seems to concede that if the letter did not amend the policy, her claim is barred by the exclusion for disability caused by a spinal disorder or injury. Because the court cannot determine based on the evidence before it whether the letter amended the policy, the court denies summary judgment on this issue.

Both the policy itself and the letter "clarifying" the Modification of Coverage rider explicitly state that an agent of Defendant is not authorized to make changes to the policy. The policy provides that an "authorized officer" must approve any changes, and that all changes must be attached to the policy. The Kansas Supreme Court has repeatedly held that such a disclaimer

10

is enforceable. See, e.g., Service v. Pyramid Life Ins. Co., 440 P.2d 944, 952-53 (Kan. 1968); Smither v. United Ben. Life Ins. Co., 190 P.2d 183, 188 (Kan. 1948); see also Pratt v. Mut. Life Ins. Co. of N.Y., 145 P.2d 113, 118 (Kan. 1944). But the letter is signed by Roberta M. Bitzer, Director, Disability Income Claims. The record does not reveal whether the Director of Disability Income Claims is an "authorized officer," and also does not reveal whether the letter was attached to the policy. In the absence of such evidence, the court cannot rule as a matter of law that the letter did not modify the insurance policy.

Assuming the letter is incorporated into the policy, a genuine issue of material fact exists as to whether Plaintiff's injury would have been disabling regardless of her prior medical history. Dr. Downs stated in a letter dated March 3, 2003:

> It is also my opinion, with a reasonable degree of medical certainty, that the severity of the injury sustained as a result of [the] August of 1999 injury would have been disabling regardless of her earlier health problems. My opinion, furthermore, is that anyone with or without prior back history could have been disabled by this injury.

This statement alone is sufficient to create an issue of fact for the court to resolve at trial.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's motion for summary judgment (Doc. 29) is denied.

Copies or notice of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 14th day of February 2005.

/s/ G. T. VanBebber
G. Thomas VanBebber
United States Senior District Judge